PETERS, J.,
dissents.
|TI agree with the summary of the evidence set forth in the majority opinion. However, I disagree that any rational trier of fact could have found that the State of Louisiana (state) proved beyond a reasonable doubt that the defendant committed the offense of sexual battery, even when “viewing the evidence in the light most favorable to the prosecution[.]” State v. Leger, 05-11, p. 91 (La.7/10/06), 936 So.2d 108, 170, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
Any offense against a child is as a particularly heinous crime, and sexual battery is no exception. In the context of this case, sexual battery occurs when a person touches “the ... genitals of the victim ... using any instrumentality or any part of the body of the offender” with the criminal intent to do so. La.R.S. 14:43.1(A). Additionally, with regard to a child under the age of fifteen who is touched by a person more than three years older than that child, consent is not a defense. La.R.S. 14:43.1(A)(2). However, every touching of the genitals of a child is not a sexual battery. Louisiana Revised Statutes 14:43.1(B) provides in pertinent part that “normal medical treatment or normal sanitary care shall not be construed as an” act of sexual battery.
12Evidence of the criminal intent element in this case is totally absent. Additionally, no physical evidence links the defendant to this offense, and a jury convicted him based solely on H.C.’s confusing, disjointed, and inconsistent testimony together with the erroneously introduced evidence of the defendant’s criminal record.
In the videotaped interview, H.C. expressed mixed emotions concerning the relationship between his family and the defendant. On the one hand he suggested that he was no longer living with his mother because the defendant had done some “mean things,” and on the other hand expressed a belief that the boyfriend/girlfriend relationship between the defendant and his mother was not a bad thing. With regard to the defendant’s actions, he was equally contradictory. At first, he told Ms. Joseph that the defendant touched him “all over on the private” but that he kept his hand still. However, later in the interview, he changed his story to suggest that the defendant moved his hand as he was touching him. Additionally, H.C.’s story to Ms. Joseph concerning the number of times and the manner in which the defendant allegedly violated him varied significantly. Early in the interview, H.C. told Ms. Joseph that the defendant had also touched his private parts with a paddle through his clothing, and later that the defendant had touched his skin inside his clothing. H.C. told Ms. Joseph that when this latter incident occurred, both his mother and half-brother were present in the trailer. Finally, late in the interview H.C. told Ms. Joseph that he was in the bathtub when the defendant came in, touched his private parts, and “that was it.”
H.C.’s recitation of the facts was not only internally inconsistent within the interview, but was also different from his trial testimony. In the interview, H.C. asserted that the defendant had touched his private parts four times, and at trial he ^testified that the offense only occurred once. Additionally, although he suggested in the interview that he was alone in the trailer with the defendant, when questioned at trial concerning whether he was ever alone in the trailer with the defen *156 dant, he responded with the equivocal comment, “I guess.”
At trial, H.C. testified that the defendant touched him in his private area “[l]ike maybe once — one time.” Additionally, he could not recall if he told anyone that it happened more than once, nor did he recall telling anyone that it never happened at all. The former statement conflicts with the videotaped account given to Ms. Joseph, and the latter conflicts with the trial testimony of Blake Bourque. Blake, who was fifteen years of age at the time of trial, testified that H.C. had pulled him aside at a family gathering in 2012 and told him that “he had been lying ... about the whole situation about [the defendant] touching him.” According to Blake, H.C. was about to cry and told him that an uncle had been the one who actually touched him. When questioned concerning any discussions with Blake, H.C. initially denied having talked to Blake about whether the defendant touched him. Then he changed his testimony to say that he had talked with Blake a couple months before trial, but could not remember whether Blake asked him if the defendant really touched him or if he had told Blake that others were telling him what to say. However, he continued his answer by saying, “I don’t think I did. I don’t remember or not.”
When asked at trial about his statement to Ms. Joseph that the defendant had touched his private parts with a paddle, the following exchange took place:
A. My old mom almost whipped me with a paddle, I think, maybe a spoon or something. My new mom whips me with a spoon, a wooden spoon.
|4Q. Do you remember telling anybody anything about being touched with paddles in your private area?
A. I don’t think — wait; no. And pretty much that’s it.
Q. I guess I didn’t understand. Do you remember telling somebody you were touched in your private area with a paddle?
A. I don’t — no, I didn’t.
Q. You didn’t tell anybody about that?
A. I told y’all about it.
Q. Who is “y’all?”
A. Everybody in the judge — I mean, in the courtroom.
Q. When did you do that?
A. Today I think. Yeah, today.
With regard to how he might have been influenced by others in presenting his testimony, H.C. stated at trial that his adoptive parents had told him to simply tell the truth. At the same time, H.C. seemed to be concerned about the possibility of being returned to his biological mother, and in response to questions stated that he “like[s] staying with [his] new mom and dad” and “want[s] to stay with them a whole lot until [he is] a grownup. He stated that he was' “kind of worried” about having to return to his mother and commented that he was “trying to say what I need to stay with my new mom and dad, not to go back over there.”
In addition to the internal consistencies in H.C.’s pretrial statements and trial testimony, other witnesses contradicted his version of specific events. H.C. asserted that he and the defendant were alone when the offense occurred, yet his biological mother, her father, the defendant’s mother, and two of the defendant’s brothers all testified that the defendant was never left alone with him. Valerie testified that she and her children lived in the FEMA trailer in 2007 and 2008, and |sthat the defendant never lived with her during that time. According to Valerie, the defendant, because of his probation requirements, spent time *157 with her children only “[w]ith other adult supervision.”
Even the question of where the bath took place was the subject of contradiction. When H.C. was asked if he always took a bath in the trailer or if he sometimes took a bath somewhere else, he responded, “[o]nly one time I think I did. I think; I don’t know.” Not only was the testimony unclear as to whether he took a bath in the trailer only one time or somewhere else one time, but at another time he stated that sometimes he took baths at his grandmother’s house. With regard to this issue, H.C. testified that his memories were “kind of old and fuzzy.” His biological mother, on the other hand, was clear in her testimony that H.C. always took baths at her parent’s home. She explained that this was necessary because the FEMA trailer had no hot water.
With regard to the defendant’s prior convictions, La.Code Evid. art. 412.2(A) allows evidence of such prior convictions to be admitted in order to “indicate a lustful disposition toward children” when the defendant “is charged with a crime ... involving a victim who was under the age of seventeen at the time of the offense[.]” However, the evidence may still be excluded “if its probative value is substantially outweighed by the danger of unfair prejudice[.]” La.Code Evid. art. 403.
In allowing the evidence, the trial court relied on State v. Williams, 11-876 (La. App. 5 Cir. 3/27/12), 91 So.3d 437, writ denied, 12-1013 (La.9/21/12), 98 So.3d 334. However, as noted by the majority, in Williams the victim was a nine-year-old girl who asserted that the defendant had inappropriately touched her on the top of her clothing, and the underlying carnal knowledge conviction involved a |fithirteen-year-old girl. The trial court found the cases were sufficiently similar for the evidence to be admissible under La.Code Evid. art. 412.2(A), and the passage of time since the prior conviction did not call for exclusion of the evidence. The fifth circuit affirmed the decision.
The holding in Williams is clearly distinguishable from the matter before us. The defendant’s prior convictions involve young girls as his victims. The two indecent behavior offenses occurred in 1996, and the carnal knowledge offense occurred in 1989. The offenses at issue in this litigation are not similar in that they involved female victims, and the latest occurred approximately ten years before the charged offense now before us.
The holding in State v. Archield, 09-1116 (LaApp. 3 Cir. 4/7/10), 34 So.3d 434, writ denied, 10-1146 (La.5/20/11), 63 So.3d 972, as cited by the majority is also distinguishable in that it involved former victims of the same gender; the issue before the court in that particular case related to the question of consent of the victim and the victims of the other crimes testified so that their testimony might aid the court in evaluating the credibility of the current victim. The trial court applied the balancing test and determined that the evidence was admissible under La.Code Evid. art. 412.2 even though it was prejudicial.
In the case now before us, unlike Williams and Archield, there is no other corroborating evidence to buttress H.C.’s statements. Additionally, the defendant’s convictions for offenses against girls fail to show that he has a lustful disposition toward boys. I find that the probative value of the prior convictions did not outweigh the danger of the defendant being unfairly prejudiced by their admittance into evidence, given the fact that the state’s total case prior to their submission was the various versions of what happened according to H.C.
*158 |7In finding error in the jury’s verdict, I do not suggest that H.C. intentionally fabricated his allegations against the defendant. An act of sanitary care education occurring when H.C. was three or four years old may have taken on an entirely different perspective two to three years later given the tumultuous family history H.C. endured during that interim period. By the time he was interviewed by Ms. Hinton and Ms. Joseph, he had been removed from his mother’s care because of her relationship with the defendant, and according to his adoptive father, had been adopted by his aunt and uncle. What he learned from overhearing inappropriate adult conversations during that time and how that knowledge might have shaped his memory of other events will probably never be known, but it is significant that he accused both the defendant and his brother of the same offense after he moved from his mother’s home.
From the evidence presented, a rational trier of fact could not have concluded beyond a reasonable doubt that the defendant was innocent or guilty. However, in a criminal trial the rational trier of fact need not determine beyond a reasonable doubt that a defendant is innocent; he or she need only conclude that the evidence establishes his guilt beyond a reasonable doubt. In this case, I cannot say that the evidence establishes the defendant’s innocence, but I have to conclude that the evidence is not sufficient to establish his guilt beyond a reasonable doubt. I would vacate the conviction and sentence and enter a verdict of acquittal.